Patent case, a claims case, two veterans cases and a government employee case. One of the veterans cases and the employee case are submitted on the briefs and therefore not argued. So we have three arguments this afternoon. The first one is the patent case Competitive Technologies and I believe the trustees of the University of Illinois v. Fujitsu et al. 05-12-17. Mr. Chu. Thank you. May it please the Court on behalf of the Board of Trustees of the University of Illinois, Perry Goldberg, Ray Barcelo and Morgan Chu. I want to focus on two claim construction errors by the trial court with respect to the 400 patent and then save the remainder of my time for rebuttal. Those two errors relate to the charging limitation and the clamping limitation. The six clamping claims all have a charging or discharging limitation. It is a limitation that follows open-ended language from the preamble. Two of the claims use the word including, four use the word comprising, followed by a colon and then the various limitations, one of which is the charging or discharging limitation. Those limitations state in part, quote, means for charging the panel capacitance through said inductor, end quote, and then there are additional details up to a maximum initially and secondarily until the inductor current reaches zero. The trial court erred by adding the limitation solely, that is, it concluded that charging must be solely from the inductor until its current reaches zero of the panel capacitance. Keeping in mind these are open-ended including or comprising claims, nowhere in any of these six claims does the word solely appear, only, exclusively or any other word that would import that kind of concept. You have this strict regime, though, of charging, reaching zero, clamping. If you have another source in there, how does the whole patent make sense? I mean, it has this structure that conceives of draining the power to the point of zero, then clamping, and then initiating the cycle again. Let me give an example. You have charging from the inductor and then at the same time, or at a time later when the charging is still occurring from the inductor, you add a second source. And then how would you know that you reached zero in the first source and clamp? And why would you clamp if you still got power coming in? I mean, the whole thing doesn't make much sense unless you're draining the one power source, clamping and moving on. It does make sense. Tell me how. Okay, you can have, let's say you have ten units of current that are coming from the inductor, and then it's down to nine, eight, and you add a second source. And it goes up to 15, 16, 18, whatever. Or whatever, it could be more or less than that of what is being charged to the panel, the panel capacitance. Meanwhile, the inductor is still having current flowing from the inductor to the panel. As far as when the inductor reaches zero, that's something that can be measured. It is discussed, obviously, in the patent, both in an ideal circuit as well as a practical circuit, particularly figure eight. Now, why would you then clamp a third source when the second source reaches zero, if you really want to build the power up? Well, here's the reason why. The goal of the sustained driver circuits in the 400 patent is to reuse power that's already been used by the panel. It holds it in a holding tank. A capacitor is shown. The current is released from the capacitor. It is temporarily stored in the inductor, and then it's transferred to the panel. That's where the power savings come from. But this circuit is not frictionless. It has resistance, the switches, the wires, and the light. So we need to have some additional power. It happens, it refers to this additional power for practical purposes. Let's just say it comes from a wall socket, at least initially. This additional power, now what's it doing? We can look at figure eight, and when this additional power is added, there is a spike up in the voltage. In fact, that spike up is above the VCC voltage that is the targeted voltage. Remember, figure eight is not an idealized circuit, but it's a practical circuit in the real world. Then that voltage comes down to the forcing voltage, to VCC, and then at that point it is clamped. And that really is the second error of the court. Mr. Chiu, if Judge Rader is through with that line of questioning, I'd like to ask you about this reexamination issue with respect to the 400 patent. We really can't deal with that, can we? Because we don't have the reexamination claims, and that's a side issue. We're dealing with this patent whose claims have been held invalid, and we'll decide whether that was correct or not. But the reexamination issue is really not before us, is it? That's correct, and just to be sure, with respect to the 400 patent, we're talking about two different sets of claims. We're talking about the clamping claims, which are a live issue. Despite the reexamination, there's a need to decide the claim construction issues, both on charging and clamping. With respect to the non-clamping claims, which I think Your Honor is addressing, there was a decision of invalidity, and that decision should simply be vacated since all of the non-clamping claims have been amended. Now, Fujitsu argues— Well, why vacated? Those were claims, amended claims and new claims. I think the basic choice is either to address our arguments about the validity or invalidity, and there is a practical significance of two parts to that. One is Fujitsu has indicated that they want and therefore they ought to have costs, which can be substantial. But second and most importantly, Fujitsu has a series of state law counterclaims, some of which are based on the allegation that the bringing or assertion of these patent claims, among others, was improper. So the court could decide to do claim construction with claims that no longer exist. The alternative to that is simply to vacate the ruling of the law. They no longer exist, but they were decided on below, and that's the case we're reviewing. That's correct. You're saying the appeal on those superseded claims is withdrawn? No, the appeal does exist. We actually asked the trial court to stay proceedings because we had already initiated the reexamination. Those claims were being amended. The district court, well within its discretion, decided not to do so but to rule on those claims. So I suppose there were three logical possibilities. To reverse, as we would argue, to vacate and basically say it doesn't matter anymore because they're moot, or to affirm, which would be to make a substantive decision on these claims. It does strike one that an efficient use of judicial resources would be simply to vacate the decision because it has no practical significance going forward. Back to figure 8, though. That depicts charge being added after the charge has finished coming through the inductor. In other words, it doesn't say anything about concurrent charging. Figure 8 has nothing to do with concurrent charging. It doesn't depict that in the slightest, does it? That's correct. My point had to do with the interpretation of clamping. Now there is a relationship between charging and clamping. The charging argument is it's an open-ended claim. There's no adverb, adjective to say it must be sold. But it says until you reach zero. That is resoundingly recited time after time. That's the whole point of this. And if you have a concurrent charging going on, you're kind of nullifying the entire effect of reaching zero. No, not at all. That's what you're trying to explain to me. It's taking you a long time to get there. Is there a quick answer? Maybe there isn't. There is a quick answer. You can have a second source charging the panel at the same time as the inductor is charging the panel. Why would you do that? In the framework of this patent, which is all draining that one power source completely and then clamping. No, that's not what the panel either claims or necessarily describes. The reason you would do it is because of the nanoseconds in a fast-acting circuit. You would want it to act very rapidly. And contrary to Fujitsu's position, which is clamping is the equivalent of closing a switch. At the precise moment measured in nanoseconds when the switch is closed, it doesn't suddenly propagate instantly its effects. So there are circumstances where you do want to have concurrent charging. The main point is there is no limitation that excludes. There is nothing in the claim language of the patent that excludes it. So what happens on the clamping side? It is when it is maintained at a steady state after that bump up. And the main error of the court was based on its incorrect belief, as stated in its order, that it was impossible to have concurrent charging. That was Fujitsu's argument below.  And then the court went on to say that the closing of the switch must be responsive to the inductor current reaching zero. That doesn't appear in any of the six asserted clamping claims. And indeed, in three unasserted dependent claims, specifically 34, 37, and 41, there is a responsiveness limitation. So concurrent charging can only happen prior to clamping? Concurrent charging while the inductor, yes. If it's concurrent with the, well, let me take that back for a moment. Clamping is when it is maintained in a steady state. The way to think of this is I am getting dressed by putting on my shirt and putting on my pants. I am dressed when that act is complete. The switch might be closed to begin the process, but clamping doesn't take place until a period of time later, which is the steady state shown in figure eight. Can I ask, I want to ask just one question. I will try not to eat too much into your rebuttal time. But my question, on a logistical matter, on the claim construction of the charging, non-charging, if we were to disagree with the district court's claim construction, what if any implication does that have to the invalidity of the 400 patent? Is there any? Those are just a separate set of claims, so it would not have any direct impact. Thank you very much. Mr. Kramer. Yes, sir. Karl Kramer on behalf of Fujitsu. With me today is Paul Coyne and Jim Lee. Let me address first the clamping issue, because I don't think we had an opportunity to address that squarely in our opposition brief, because I don't think it was raised in the opening brief. Clamping was interpreted by the judge below as the act of adding a reference voltage, which then brings the reference voltage and the panel capacitance together. We described below evidence that supported that. And the key is, if you look at the patent, the claims say that the clamping event occurs upon the inductor current reaching zero. In the abstract and in column 12, the patent is very clear about what act coincides with the event upon the inductor current reaching zero. In the patent, in the abstract, and in column 12, and in each of the figures, the event that occurs is an act. It's an act of closing those switches to clamp it to the reference voltage. And that's why the judge's interpretation was correct. And we know that's correct because Dr. Bitzer and Dr. Anand both testified that that is, in fact, the event in the patent specification that occurs upon the inductor current reaching zero. So, with respect to clamping, that is the key. And if you look at figure 8, figure 8 shows why the event must be the closing of those switches. In figure 8, the event that occurs upon the inductor current reaching zero is, in fact, closing that switch. So, when you look at the patent specification, it meets exactly what the judge decided in terms of what clamping means. Now, again, the entire purpose of the patent was to avoid adding current through that clamping switch. Because that's how you lose energy efficiency. So, the notion that you could clamp at any time during the cycle of also charging through the inductor and meet these claims and meet what these inventors intended makes no sense. The invention was intended to avoid those switching losses. If you look at column 8 at the bottom on top of column 9, they lead into the entire description by saying the key here is avoiding switching losses. And you do that by designing it properly. And then they spend the next six columns describing how you do that. You avoid switching losses by switching when there's no inductor current and when you have a voltage difference that's as minimal as possible between the reference voltage and the panel. Do the claims prohibit concurrent charging prior to clamping? Yes, I believe the proper construction is... Where does it prohibit? Well, if you read, for example, claim 38, it says you charge the panel capacitance through the inductor. You then, in the first step, charge to an intermediate level through the inductor while storing energy in the inductor. And then you discharge by removing that energy from the inductor. All of those things are said to occur through the inductor. If you clamp before that, you are no longer charging through the inductor. And that property no longer exists. I'm looking at claim 33. You have an inductor coupled. You have a means for charging, means for clamping. Where does it say it all has to be through the inductor? Claim 33 starts with an inductor coupled to said panel electrodes for charging and discharging the panel capacitance. So that's telling you... Does that say that's the only source of charging? It's the only source that's listed in the claim. That's certainly true, but you're a patent lawyer. Actually, I'm not. You're here arguing patent law. You better be a patent lawyer. Is this a closed claim? It says included. Meaning? Meaning it includes that. And could it include something else? I don't see how you could read it to include a charge from a reference voltage, because these properties no longer are true. You're not charging through the inductor. When you say including, that says you're including it. Does that preclude everything else? It precludes in this case, because if you add a reference voltage before the inductor current reaches zero, you are no longer charging or discharging through the inductor. Where does it say I have to charge only through the inductor? That's the question. But it says you have to charge through the inductor until the inductor current reaches zero. Yeah, it sure says that. And so if I'm measuring my inductor current, and when it reaches zero I'm going to clamp, but I've got other charging occurring from another source, where is that precluded? It's precluded because when you add a reference voltage to this system before the inductor current reaches zero, you are no longer charging or discharging through the inductor. You're charging or discharging from the source. You've said that several times, and I'm looking for the place in the patent where it says you only charge through the inductor. Well, it says here in claim 33, I'll read it again. It says, means for charging the panel capacitance through said inductor, initially while, and then ends that clause. At the end it says, means for discharging the panel capacitance through said inductor, initially while something's happening, and secondly, while removing the stored energy from the said inductor, until the inductor current reaches zero. So if you stop charging or discharging through the inductor, you're no longer meeting this limitation. No, you're not stopping. It's still charging, discharging through that inductor. There's another source. There's no reference in the record. There is no reference in the patent. That is absolutely correct, but it is an including patent. I'm saying the scientific evidence in the record is that when you interrupt charging through the inductor before the inductor current reaches zero, you are no longer effectively charging or discharging through the inductor. If you look at, for example, A4628-30, that shows diagrams of their tests on our devices. Are you saying that the inductor will stop charging if there is another source? Yes. Where's the source of that? It's in the record in a brief. When you add that reference voltage, it overwhelms the inductor, and the inductor is no longer effectively charging the panel capacitance. If you look at those diagrams I've mentioned, A4629. This is extrinsic evidence? Is this a matter of record? Yes, it is in the record. We've cited it, and it's in the record. If you look at those diagrams, they show what the university did with our own devices. They modified our device so that they clamped it at zero, and then they compared the waveforms. If you look at those waveforms, they show that when you do it the way Fujitsu does and interrupt the inductor current, the panel capacitance just takes off, and all of that charging is occurring from the power supply and also on the discharge side. It just drains the panel capacitance right away, and there's a huge difference between that when you add that reference voltage and it takes over and when you're charging through the inductor and discharging. Mr. Kramer, what's your view of the effect of the reexamination on this appeal? Our view is it has no effect. It's a voluntary action made by the university that may someday render some of the issues no longer live, but in point of fact, that's a choice they made, and we have a judgment below of invalidity on these claims. We still think we're entitled to a judgment out of this court on that record below. Let me also say that one of the options is not a reversal for those claims because they have argued, except for two out of the validity claims, anything about how those claims could be valid. So if you look at the briefing, they've not challenged the invalidity of all but two of the claims that the court below found invalid. So I don't think there's any ground on appeal for reversing those, and if you look at the two that they did challenge, we don't believe there's any merit whatsoever to that challenge. Any other questions from the board? No. I'll reserve time in case something comes up. You can't reserve time. You're not a cross-appellant, so you either use it or lose it. Thank you. Mr. Chu. Thank you, Your Honors. Fujitsu's main argument just now was akin to the technical impossibility. He is referring to extrinsic evidence that they argued to the trial court in a brief and supposedly supported it with their expert declaration. The question of whether charging from the inductor does or doesn't stop, I thought, was no longer a debate. It continues. What Fujitsu argues on its briefs on appeal is that it isn't too much more of an inductor charge moving from the inductor to the panel. Now, this is extrinsic evidence that they had submitted below and that was sharply disputed by the University of Illinois's expert. It is, even if we were to give credit to Fujitsu's argument, which we don't, then it is dependent solely on their argument of the extrinsic evidence. Here's the main point about the clamping and the switches. In the claims it issued, in most of them, the word switch doesn't appear. In fact, two of the claims, 38 and 40, do have switch means. And the question is, when does the clamping occur? It must occur upon the inductor current reaching zero. And in fact, what happens, as shown by the evidence in the Fujitsu-accused products, it does happen upon the inductor current reaching zero. Clamping is the act of maintaining at a specific reference voltage. The closing of the switch occurs earlier than that. It can occur when the inductor current reaches zero or it can occur before the inductor current reaches zero. The only question is whether the clamping, the maintaining at a steady state, as shown in Figure 8, is occurring after the inductor current reaching zero. So that was one of the errors with respect to clamping. The other was the error with respect to requiring responsiveness, beginning at page A65 of the claim construction order, where the word response does not appear at all. And then, of course, the third error was importing from the charging interpretation the technical impossibility argument when, in fact, it technically does take place that there can be two sources, one from the inductor and one from a second source. Thank you very much, Your Honor. Thank you, Mr. Chu. The case will be taken under advisement.